**Diane KIRKHUFF, et al.**

v.

**LINCOLN TECHNICAL INSTITUTE INC., et al.**

**Ross P. Bartimus**

v.

**Lincoln Technical Institute, Inc., et al.**

**Robert C. Radle**

v.

**Lincoln Technical Institute, Inc., et al.**

**Civil Action Nos. 02–483, 02–2043, 02–2044.**

United States District Court, E.D. Pennsylvania.

Sept. 6, 2002.

Jane Roach, Stroudsburg, PA, for Diane Kirkhuff.

Joseph M. Profy, Kenneth M. Kolaski, Andrew J. Soven, Reed, Smith, Shaw & McClay, Philadelphia, PA, for Lincoln Technical Institute, Inc.

Lincoln Technical Institute, Inc., West Orange, NJ, pro se.

Kristofor T. Henning, Stephen A. Serfass, Drinker Biddle & Reath LLP, Philadelphia, PA, for The United States Life Insurance Company in the City of New York.

## MEMORANDUM

BARTLE, District Judge.

These are actions alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Before the court are motions to amend each complaint to add a claim for punitive damages under Pennsylvania's bad faith statute, 42 Pa.Cons.Stat.Ann. § 8371.

Plaintiffs are employees of defendant Lincoln Technical Institute, Inc. They are participants in an employee welfare benefit plan providing insurance benefits through a group life insurance policy issued by defendant The United States Life Insurance Company in the City of New York. Plaintiffs contend that certain benefits have been cancelled or deleted in violation of ERISA.

Plaintiffs' motions to amend were triggered by a recent decision by our colleague Judge Clarence C. Newcomer in *Rosenbaum v. Unum Life Ins. Co. of Am.*, Civil Action No. 01–6758 (E.D.Pa.), allowing a bad faith claim to proceed in an ERISA action. Shortly thereafter, our colleague Judge Ronald L. Buckwalter reached the opposite result in *Sprecher v. Aetna U.S. Healthcare, Inc.*, Civil Action No. 02–580 (E.D.Pa.). He concluded that ERISA preempted such a cause of action.

Rule 15 of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires." However, leave should be denied when the amendment would be futile, that is, when the amendment does not state a claim for relief. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The Pennsylvania bad faith statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.Cons.Stat.Ann. § 8371.

ERISA, which expansively regulates employee benefit plans, contains a broad preemption provision:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

29 U.S.C. § 1144(a).

■ It is undisputed that the Pennsylvania bad faith statute relates to employee

benefit plans and thus comes within the embrace of this preemptive language. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). This, however, does not end our analysis. To complicate matters, ERISA proceeds to give back part of what it takes away. It exempts from preemption "any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). We must therefore determine whether the bad faith statute is a law which regulates insurance so as to survive under this saving clause.

■ The question of the interplay of the preemption and saving clauses of ERISA has "occupie[d] a substantial share of [the Supreme Court's] time." *Rush Prudential HMO, Inc. v. Moran*, —— U.S. ——, ——, 122 S.Ct. 2151, 2158, 153 L.Ed.2d 375 (2002). In a series of opinions, the Court has developed a multi-faceted test for deciding whether a particular state law is on one side of the line or the other. *E.g., id.* 122 S.Ct. at 2159; *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 367–68, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999); *Pilot Life*, 481 U.S. at 48–49, 107 S.Ct. 1549. In its latest pronouncement on the subject, the Supreme Court reiterated that we must first start with a " 'common sense view of the matter' " in deciding whether a particular law is " 'specifically directed toward [the insurance] industry.' " *Rush*, 122 S.Ct. at 2159. We must then test this result against the three factors used to determine whether the state insurance laws are exempt from preemption under the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq. The three factors are:

(1) whether the practice [or law] has the effect of transferring or spreading a policyholder's risk;

(2) whether the practice [or law] is an integral part of the policy relationship between the insurer and the insured; and

(3) whether the practice [or law] is limited to entities within the insurance industry.

*Id.* 122 S.Ct. at 2163; *UNUM*, 526 U.S. at 367, 119 S.Ct. 1380. The Supreme Court has cautioned that these are merely "guideposts." *Rush*, 122 S.Ct. at 2163. None is necessarily determinative on the issue of preemption. *UNUM*, 526 U.S. at 373, 119 S.Ct. 1380.

For the reasons stated in *Sprecher* and *Rosenbaum*, we agree that under a common sense view the Pennsylvania bad faith statute is directed specifically toward the insurance industry. One need only look at its language. Furthermore, we agree that the statute does not involve the transferring or spreading of risks. However, as to the second McCarran–Ferguson factor we find the reasoning in *Sprecher* persuasive that the bad faith statute does not constitute an integral part of the relationship between the insurer and insured. Finally, we concur with both *Sprecher* and *Rosenbaum* that the statute is limited by its express terms "to an action arising under an insurance policy," and thus to entities within the insurance industry.

■ Nonetheless, even if the statute would otherwise fit within the saving clause, preemption still wins the day if "state law permits claimants to obtain remedies that Congress rejected in ERISA." *Rush*, 122 S.Ct. at 2165; *Pilot Life*, 481 U.S. at 54, 107 S.Ct. 1549. The Supreme Court in *Rush* specifically declared that any state law that "added to the judicial remedies provided by ERISA . . . violates ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards or primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush*, 122 S.Ct. at 2166.

Under ERISA, a participant or beneficiary may seek benefits due; enforce and clarify rights under the plan; and obtain equitable relief to enjoin or redress violations, or to enforce provisions of the plan. 29 U.S.C. § 1132(a). In addition, one may seek to remove a fiduciary, and to recover losses to a plan resulting from a breach of fiduciary duty. 29 U.S.C. §§ 1109 and 1132(a). ERISA also permits the awarding of attorney's fees. 29 U.S.C. § 1132(g). Unlike the Pennsylvania bad faith statute, ERISA nowhere authorizes a participant or beneficiary to obtain punitive damages or interest 3% above prime. *See Pilot Life,* 481 U.S. at 54, 107 S.Ct. 1549.

The Supreme Court ruled in *Pilot Life,* an ERISA case involving a claim under the Mississippi common law of bad faith applicable in both the insurance and non-insurance context, that the remedies set forth in ERISA are exclusive and that a remedy for punitive damages is not to be implied. The Court held the Mississippi common law allowing punitive damages to be preempted. *Id.* at 57, 107 S.Ct. 1549; *see Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147–48, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). As *Pilot Life* made clear, "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life,* 481 U.S. at 54, 107 S.Ct. 1549.

The more recent Supreme Court decision in *Rush* is not to the contrary. There Illinois state law provided for an independent medical review of a patient's claim when it is disputed by his or her health maintenance organization (HMO). The HMO had a contract to provide medical services under an employee benefit plan covered by ERISA. Under the ERISA plan, the HMO had the "broadest possible discretion" in determining whether the medical services were "medically necessary." The Court ruled that the state law was merely akin to requiring a second opinion and nothing more than a procedure for the administrative review of benefit determinations. In deciding that the Illinois insurance law in issue was not preempted, the Supreme Court explained that it "provides no new cause of action under state law and authorizes no new form of ultimate relief." *Rush,* 122 S.Ct. at 2167.

In contrast, the Pennsylvania bad faith statute provides a new cause of action and a new form of ultimate relief. No common law remedy existed in the Commonwealth for bad faith conduct on the part of an insurer. *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966, 970 (1981). To rectify what it saw as a deficiency in the common law, the Pennsylvania General Assembly enacted the bad faith statute in 1990. *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). The purpose of the enactment is " 'to provide a statutory remedy to an insured when the insurer denied benefits in bad faith.' " *O'Donnell ex rel. Mitro v. Allstate Ins. Co.,* 1999 Pa.Super 161, 734 A.2d 901, 905 (1999). In sum, the Pennsylvania bad faith statute creates a separate form of relief not only beyond what had heretofore been available in the Commonwealth but with its allowance of punitive damages supplies a remedy not authorized by Congress under ERISA.

We recognize that in *Pilot Life* the Mississippi common law of bad faith, unlike its Pennsylvania statutory counterpart, affected entities beyond the insurance industry. For this reason, the Mississippi law clearly did not survive under ERISA's saving clause for laws merely regulating insur-

ance. However, we do not think this distinction between the laws of these two states is significant in light of the Supreme Court pronouncements in that and later cases that the preemptive effect of ERISA is broad with respect to remedies. In our view, the Supreme Court's decision would have been the same even if Mississippi had had a narrower law. Otherwise a state could easily circumvent *Pilot Life* and ERISA by passing a specific statute like the one before us or even by enacting two separate bad faith statutes, one to deal with recalcitrant insurers and a similar one to deal with all other malefactors. Such a result would effectively upset, if not nullify, the nationally uniform remedies of ERISA.

As the Supreme Court has emphasized in its recent ruling in *Rush,* "the civil enforcement provisions [of ERISA] are of such extraordinarily preemptive power that they override even the 'well-pleaded complaint' rule for establishing the conditions under which a cause of action may be removed to a federal forum." *Rush,* 122 S.Ct. at 2165. Consequently, even though the Pennsylvania law in issue allowing the award of punitive damages is directed solely toward the insurance industry, we agree with *Sprecher* that it conflicts with the carefully crafted and exclusive remedial scheme of ERISA and is preempted.

Since pursuit of any claims by plaintiffs under the Pennsylvania bad faith statute, 42 Pa.Cons.Stat.Ann. § 8371, in these ERISA actions would be futile, the motions of plaintiffs to amend their complaints will be DENIED.

### ORDER

AND NOW, this 6th day of September, 2002, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motions of plaintiffs in each of these three actions to amend their complaints to add a claim under 42 Pa.Cons.Stat.Ann. § 8371 are DENIED.